Opinion for the court filed by Circuit Judge RADER, in which Judge LOURIE, Judge GAJARSA and Judge MOORE join. Opinion concurring in part and dissenting in part filed by Circuit Judge NEWMAN.
RADER, Circuit Judge.
The United States District Court for the Eastern District of Texas construed the claim term “score line” during trial, denied Enpath Medical Ine.’s (“Enpath”) motion for Judgment as a Matter of Law (“JMOL”) that U.S. Patent Nos. 5,125,904 (the “ '904 patent”) and 5,312,355 (the “ '355 patent”) (collectively, the “Lee patents”) are invalid, and denied Enpath’s motion for leave to amend its answer to assert inequitable conduct. Because the record does not support the district court’s claim construction, this court vacates the district court’s finding of infringement and remands for further proceedings in light of the correct claim construction. As the record supports the district court’s denial of Enpath’s motions for JMOL and leave to amend its answer, this court affirms those denials.
I.
Pressure Products Medical Supplies, Inc. (“Pressure Products”) is the exclusive licensee of the Lee patents for a medical device known as an introducer. An introducer is a device that permits a surgeon to place and remove catheters or pacemaker leads into blood vessels during surgical procedures. The introducer has a sheath that often includes a hemostatic valve that remains in the vein and facilitates regulation of blood flow during an operation. After insertion of the lead, the surgeon must remove the sheath and leave, for example, a pacemaker lead in place. Because the sheath cannot be slipped over the pacemaker end, the prior art included “splittable” or “peel-away” sheaths. These sheaths also included a hemostatic valve.
The prior art, however, had no convenient way to remove the valve along with the sheath. Thus, almost any procedure to remove the valve would cause considerable blood loss during a surgical procedure. This invention devised a way to remove both the valve and the sheath by a splitting process. Figure 1 shows the configuration of the invention. Figure 3 shows a splittable hemostatic valve [14] including a means [34, 36] for splitting or separating the valve and sheath [12],
*1312 [[Image here]]
Pressure Products licensed the Lee patents from H.L. Medical Inventions, Inc., owned by the inventor of the '904 and '355 patents, Dr. Hongpyo Henry Lee, M.D., a California cardiologist. Then, Pressure Products sued Enpath in the Eastern District of Texas, alleging that Enpath’s FlowGuard™ introducer product (“Flow-Guard™”) and its ViaSeai™ prototype introducer product (“ViaSeai™”) infringe the Lee patents. Enpath and Pressure Products completed claim construction discovery and briefing by July 27, 2007. The magistrate judge held a Markman hearing on August 15, 2007, and entered a Mark-man order on March 19, 2008, about three months before trial.
Claim 1 of each of the '904 and '355 patents recites the disputed limitation: “means for permitting removal of said hemostatic valve and introducer sheath from said lead or catheter disposed there-through without requiring said introducer sheath and hemostatic valve to be removed from an end of said lead or catheter.” '904 patent col.6 1.66-col.7 1.2; '355 patent col. 10 11.11-15. The magistrate judge ruled that “means for permitting removal” called for a claim construction under 35 U.S.C. § 112, paragraph 6. Under that statutory process for construing functional claim terms, the magistrate judge determined that the structure in the specification that corresponds to the claimed function is “score lines defined in the hemostatic valve and introducer sheath, and equivalents thereof.”[1] The term “score line” is recited in dependent claims 4 through 8 of the *1313 '904 patent but not in any independent claims. After considering the parties’ arguments and relying on a dictionary definition, the magistrate judge defined “score line” as “one or more line(s) defined in the hemostatic valve and introducer sheath.” The magistrate judge did not further define the term “score line.”
Depictions of Enpath’s FlowGuard™ and ViaSeai™ introducers, made of polytetrafluoroethylene (“PTFE”), are shown below.
FlowGuard*
[[Image here]]
These introducers include a feature that Enpath calls a “cut” or “slit” (or what Pressure Products refers to as a score line) at the top of the PTFE tube or sheath to allow for removal. The trial record included testimony that Enpath’s cut or slit facilitates splitting and removing the PTFE tube; very few, if any, PTFE introducers did not include this feature. Indeed, Enpath’s manufacturing procedure describes creating a slit at the proximal end of the sheath. During trial, Pressure Products’ expert, Mr. Joseph Thomas, testified that this manufacturing procedure placed the slit or score in the device so that the PTFE tube or sheath could be peeled or torn apart. According to Mr. Thomas, the molecular composition of the *1314 PTFE would make the sheath split evenly along its entire length. Also at trial, Pressure Products presented X-rays of En-path’s FlowGuard™ and ViaSeai™ introducers that indicated the sheath ends are cut or scored. In contrast, the record showed that introducers not made of PTFE require scoring along the entire length of the sheath bodies to permit their even splitting and removal. In papers submitted to the Food and Drug Administration, Enpath described its FlowGuard™ device as having “[a] scored/splittable introducer sheath.”
The jury trial began on June 6, 2008. At the close of Pressure Products’ proof, the district court, sua sponte, defined “score line” as a “linear perforation; slit; slot; tab; line; severing; weakening; or tear that can be partial or complete.” The court supplemented its definition of the term in response to Enpath’s cross-examination of Pressure Products’ witnesses over a two-day period. To avoid any jury confusion about the meaning of “score line,” the court decided to supplement the definition of that term. In the words of the trial court, “it seems fairly obvious it’s something that, in fact, does need to be defined because defendants are pushing on it.” Enpath initially agreed with the district court’s decision to supplement the definition but later objected to the amended construction. On June 12, 2006, the jury returned a verdict for Pressure Products, finding that Enpath’s FlowGuard™ and ViaSeai™ introducers literally infringed the Lee patents. The jury found the Lee patents valid and infringed and awarded $1.1 million in damages. The jury also determined that the infringement was not willful.
Before trial, Enpath had moved for leave to amend its answer to assert the defense of inequitable conduct. Enpath premised its motion on allegedly new evidence concerning a declaration submitted during the reexamination of the '904 patent. The district court denied Enpath’s motion as untimely. Enpath filed its motion eighteen months after Pressure Products filed its complaint and over one year after Enpath filed its answer and counterclaims. Moreover, Enpath’s motion came ten months after the deadline to join additional parties under the original scheduling-order, and eight months after the deadline to amend the pleadings under the amended scheduling order.
After trial, the district court denied En-path’s JMOL motion that the Lee patents are invalid and permanently enjoined En-path’s sales of FlowGuard™ and ViaSeai™ products. The court, however, stayed the injunction as to FlowGuard™ sales, conditioned on Enpath’s deposit into an escrow account or the court registry of an ongoing-royalty.
Enpath timely appeals the district court’s final judgment, its construction of “score line,” and the denial of Enpath’s motions for JMOL and leave to amend its answer. This court has jurisdiction over this case under 28 U.S.C. § 1295(a)(1).
II.
This court reviews claim construction without deference. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc). Claim construction, though dependent on the language of the claims themselves, see Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed.Cir. 2005) (en banc), requires this court to read that language “in view of the specification, of which they are a part.” Id. at 1315 (internal quotation marks omitted). The *1315 specification is the “single best guide to the meaning of a disputed term.” Id. (citation omitted). A court should also consider the patent’s prosecution history, id. at 1317, and may rely on dictionary definitions, “so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.” Id. at 1322-23.
This court reviews the denial of a motion for JMOL under the law of the regional circuit. 800 Adept, Inc. v. Murex Sec., Ltd., 539 F.3d 1354, 1366 (Fed.Cir. 2008). The United States Court of Appeals for the Fifth Circuit reviews a district court’s denial of a motion for JMOL without deference. Thomas v. Tex. Dep’t of Criminal Justice, 220 F.3d 389, 392 (5th Cir.2000). Thus, this court must uphold a JMOL in favor of the jury verdict unless “there is no legally sufficient evidentiary basis for a reasonable jury to [reach that result].” Bryant v. Compass Group USA Inc., 413 F.3d 471 (5th Cir.2005) (citing Fed.R.Civ.P. 50(a)).
The denial of a motion to amend a pleading under Rule 15(a) is a procedural matter also governed by the law of the regional circuit. Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C., 482 F.3d 1347, 1357 (Fed. Cir.2007). Rule 16(b) provides that once a scheduling order has been entered, it “may be modified only for good cause and with the judge’s consent.” It requires a party “to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.” S & W Enters., LLC v. Southtrust Bank of Ala., NA, 315 F.3d 533, 535 (5th Cir.2003). As to post-deadline amendments, a party “must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply to the district court’s denial of leave to amend.” Sw. Bell Tel. Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir.2003).

III.

During trial, the district court defined “score line” — the corresponding structure of the means-plus-function limitation in claim 1 of the '904 patent. The district court defined the term largely in response to Enpath’s cross-examination of Pressure Products’ witnesses. Enpath’s cross examination strategy revealed a dispute over the trial court’s definition of the term “score line” in its Markman order. While recognizing the potential for surprise and prejudice in a late adjustment to the meaning of claim terms, this court also acknowledges that the trial court is in the best position to prevent gamesmanship and unfair advantage during trial. Moreover, this court understands that a trial judge may learn more about the technology during the trial that necessitates some clarification of claim terms before the jury deliberates. Indeed, before the district court defined “score line,” it acknowledged that it was in a better position than the magistrate judge at the Markman hearing to understand the operation of sheaths due to extensive expert testimony from both parties.
Enpath posits that the trial judge’s late adjustment prejudiced its defense and compromised its ability to respond. While somewhat sympathetic to those concerns in general, this court is not prepared to substitute its judgment for that of the district judge, who understood the entire context far beyond the limitations of the written record on review in this proceeding. Moreover, the district *1316 court made the adjustment early enough in the trial to give Enpath an opportunity to consider the new construction and adjust its arguments to account for the change. Thus, this court does not consider the trial court’s supplemental definition of a claim term during trial to present a fundamental procedural flaw that jeopardizes the jury’s verdict. As this court has recognized, “district courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.” Pfizer, Inc. v. Teva Pharm., USA Inc., 429 F.3d 1364, 1377 (Fed.Cir.2005); see also Utah Med. Prods., Inc. v. Graphic Controls Corp., 350 F.3d 1376, 1381-82 (Fed.Cir.2003) (holding that the district court did not err in amending its claim construction during oral arguments for pretrial motions nearly two years after the original construction). Moreover, “[w]hen the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.” 02 Micro Int’l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed.Cir.2008).
Although originally agreeing with the district court’s decision to supplement its definition of “score line,” Enpath now contends that the district court erred by relying on 02 Micro for its decision. According to Enpath, “the district court was in no way faced with the jury interpreting the ‘means for permitting removal’ or ‘score line’ limitations because the magistrate judge had already construed those terms.” Enpath cites to a non-binding district court decision distinguishing 02 Micro, as well as Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 694 (Fed.Cir.2008). In both cases, the district court declined to supplement the definition of claim terms that had already been construed in earlier claim construction orders.
In this case, the magistrate judge defined “score line” as “one or more line(s) defined in the hemostatic valve and introducer sheath” in the context of dependent claims 4 through 8 of the '904 patent. The words “score line” do not appear in independent claim 1 of the Lee patents. Instead, that independent claim includes a mean-plus-function limitation “means for permitting removal” (i.e., “score lines defined in the hemostatic valve and introducer sheath, and equivalents thereof’). The magistrate judge then determined that the structure in the specification that corresponded to this functional limitation was a score line. The magistrate judge did not define “score line” in the context of the structure corresponding to independent claim 1 of the Lee patents. Without a definition of “score line” in the Markman order for that corresponding structure, the trial judge observed that the trial proceedings invited the jury to define this term on its own in a manner this court has questioned in 02 Micro, 521 F.3d at 1360, and Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (holding that claim construction is a matter of law for the court). Therefore, the trial court undertook to supplement the Markman order by clarifying the meaning of “score line” as the structure corresponding to independent claim 1.
Although this court concludes that it was proper for the trial court to supplement the definition of “score line,” this court must now evaluate the merits of the trial court’s definition of “score line.” In the context of the corresponding structure to independent claim 1 of the Lee patents, the trial court erred in expanding the definition of “score line” to include structures not disclosed in the specifications of the *1317 Lee patents. Section 112 requires that the corresponding structure must be “described in the specification.”
The Lee patents give a laundry list of prior art references. See '904 patent col.l 11.41-61; '355 patent col.l 11.45-63. The trial court included the structures disclosed within that list of prior art references as corresponding structures for claim 1 by including them in its definition of “score line.” In doing so, the trial court impermissibly expanded the corresponding-structure of claim 1 to include structures not described in the specification.
Trial courts cannot look to the prior art, identified by nothing more than its title and citation in a patent, to provide corresponding structure for a means-plus-function limitation. In this case, these references provide alternatives to scoring. Although many of the disclosed alternatives may well be determined to be structural equivalents permitted by section 112, paragraph 6 — a question of fact for the jury — these alternative methods of splitting or peeling cannot be treated as the disclosed structures for the removal means. Simply mentioning prior art references in a patent does not suffice as a specification description to give the patentee outright claim to all of the structures disclosed in those references.
In Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374, 1381 (Fed.Cir.1999), this court refused to utilize the concept of incorporation by reference to include a structure in the prior art as a corresponding structure for a means-plus-function claim element. In Atmel, this court held that the title of a prior art reference could provide the structure for a mean-plus-function element because “Atmel’s expert, Callahan, testified that this title alone was sufficient to indicate to one skilled in the art the precise structure of the means recited in the specification.” Id. at 1382. His testimony was essentially unrebutted. Id. If, on the other hand, the title did not disclose the prior art structure, the structures in the prior art reference could not be a corresponding structure to the means-plus-function claim element. Id. (holding that “the district court properly held that the Dickson article [prior art cited in the patent] may not take the place of structure that does not appear in the specification”).
The magistrate judge construed “score line” consistent with the specification as “one or more lines defined in the hemostatic valve and introducer sheath.” The magistrate judge, citing a dictionary, explained that “‘score’ has been defined to mean ‘any scratch, line or groove’ that is formed by the scoring process.” The trial court went on to supplement the magistrate’s construction and defined “score lines,” the structure for permitting removal, as “linear perforation; slit; slot; tab; line; severing; weakening; or tear that can be partial or complete.”
Pressure Products argues that the trial court correctly construed the term “score lines” according to the doctrine of claim differentiation. Claim 1 claims “means for permitting removal of said hemostatic valve and introducer sheath.” Claims 4 through 8 of the '904 patent claim “a score line defined in said hemostatic valve and introduce sheath” as the means for permitting removal. As such, Pressure Products argues that the means-plus-function element of claim 1 must encompass structures other than score lines, namely, those structures disclosed in the prior art references mentioned in the patent. This argument fails, however, because a means-plus- *1318 function claim element already includes structures other than the corresponding structure explicitly described in the specification, namely, equivalents of the corresponding structure. See 35 U.S.C. § 112, ¶ 6. Therefore, as the means-plus-function claim element of claim 1 includes the equivalents of score lines, the magistrate judge’s claim construction does not violate the doctrine of claim differentiation.
The specification does not expressly describe use of a cut or a slit or a tear for removal. The specification explains, “[t]he score line comprises a pair of lines defined in the hemostatic valve and introducer sheath; The pair of score lines are diametrically opposed from each other on the hemostatic valve and introducer sheath.” '904 patent col.3 11.14-18. The patent further explains, “score lines 34 and 36 are shown as having a V-shaped cross section but have such a shape and depth as to permit the entire length of introducer sheath 10 to be manually separated.” Id. col.6 11.7-10. The specification recognizes a difference between score lines and slots. Id. col.6 11.28-32 (“However, it is entirely possible that score lines 34 and 36 will be continued through flanges 38 and 40 to provide deep scores instead of open slots 44 and 46.” (emphasis added)).
The trial court erroneously used structures from the prior art references listed in the patent to provide a definition for score lines encompassing structures not disclosed expressly in the patent specification. As such, this court detects error in the trial court’s definition. Score lines are “one or more lines defined in the hemostatic valve and introducer sheath” as supported by the specification. This court remands for further proceedings in light of the proper construction of the term “score lines.” Those further proceedings will allow appropriate measures to also ascertain the structural equivalents of the express structure in the specification corresponding to the claimed function.
IV.
The district court denied Enpath’s JMOL motion for invalidity of the Lee patents. Enpath asserts it presented clear and convincing evidence that Haindl’s German Patent Number 3834600 (“the Haindl '600 patent”) anticipates and renders obvious the Lee patents. It further asserts that Pressure Products did not overcome its prima facie case of invalidity.
To demonstrate anticipation, En-path’s expert witness, Dr. Ethan Podet, provided for the jury claim construction charts comparing every element of the claims at issue to the Haindl '600 patent. Pressure Products’ expert witness, Dr. Eli Gang, rebutted Dr. Podet’s testimony by testifying that the Haindl '600 patent does not teach or suggest a critical component of the Lee patents, i.e., the combination of both a splittable hemostatic valve and a splittable introducer sheath. Dr. Gang also examined each of the other prior art references cited in Dr. Podet’s expert report and gave reasons why they did not show anticipation or obviousness. Anticipation requires “a single prior art reference [that] discloses each and every limitation of the claimed invention.” Schering Corp. v. Geneva Pharm., 339 F.3d 1373, 1377 (Fed.Cir.2003). Moreover, the Patent and Trademark Office (“PTO”) examined the Haindl '600 patent twice during the examination and re-examination of the '904 patent. The PTO, nevertheless, allowed the '904 patent, instilling the statutory presumption of validity into the Lee patents.
*1319 To rebut Dr. Podet’s obviousness testimony, Pressure Products used Dr. HansGuenter Haindl’s declaration filed during the reexamination of the '904 patent. In the declaration, Dr. Haindl states that his invention, the Haindl '600 patent, lacks a hemostatic, splittable valve as claimed by the '904 and '355 patents. Dr. Haindl’s declaration also states that the Haindl '600 patent does not include an “enabling disclosure” of a splittable assembly.
Furthermore, Pressure Products offered secondary evidence of non-obviousness including evidence of commercial success, long felt need, skepticism of experts, and unexpected results of the commercial embodiment of the Lee patents. This court “has repeatedly explained, [that secondary consideration evidence] is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness.” Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc., 520 F.3d 1358, 1365 (Fed.Gir.2008). In terms of the skepticism of experts and unexpected results, the record confirms that other medical device companies initially turned down the opportunity to license the Lee patents because they did not believe that the invention would work. Enpath did not offer any evidence that rebutted or challenged Pressure Products’ secondary evidence of non-obviousness.
In sum, the trial record shows ample support for the jury’s judgment that the claimed invention would not have been anticipated or rendered obvious by prior art at the time of invention. Enpath has not shown that the jury’s verdict on these points was unreasonable or based on insubstantial evidence. Because substantial evidence supports the jury’s verdict, the district court did not err in denying En-path’s motion for JMOL on invalidity.
V.
The district court denied Enpath’s motion for leave to amend its answer to assert the defense of inequitable conduct. Enpath based its defense on a November 5, 2007 declaration of Mr. Steven Kontos, a biomedical engineer and designer of catheters and devices used with catheters. Mr. Kontos stated in his declaration that although he recognized his signature, he did not remember signing two 1995 declarations supporting the patentee during reexamination of the '904 patent. Enpath contends the district court’s denial was an abuse of discretion.
Two different standards exist for the denial of a motion for leave to amend the pleadings. The more rigid standard of Rule 16(b) is applicable to motions filed after a scheduling order deadline has expired and requires a showing of good cause to file outside the deadline. See S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir.2003). Under the more liberal standard of Rule 15(a), the trial court should grant leave to file absent a substantial reason for denial, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies with other amendments, futility of the amendment, or undue prejudice to the opposing party. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); see also Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000) (“[Rule 15(a) ] evinces a bias in favor of granting leave to amend.”).
Enpath contends that Rule 15(a) applies in this case because the district court set a “Final Amended Pleadings” deadline of April 5, 2007 for the plaintiff but not for Enpath. The district court’s scheduling order further set a deadline of April 26, 2007 to “Respond to Amended Pleadings” *1320 but did not set an explicit deadline to file motions for leave to amend the pleadings. Thus, when Enpath filed its motion on December 7, 2007, no scheduling order deadline had passed as applied to Enpath. However, even under the more liberal standard of Rule 15(a), leave to amend is not automatic. See Parish v. Frazier, 195 F.3d 761, 763 (5th Cir.1999); Avatar Exploration, Inc. v. Chevron, U.S.A., Inc., 933 F.2d 314, 320 (5th Cir.1991).
Prejudice is the “touchstone of the inquiry under rule 15(a).” Lone Star Ladies Invest. Club v. Schlotzsky’s Inc., 238 F.3d 363, 368 (5th Cir.2001). Thus, prejudice to the nonmoving party may be sufficient to deny leave to amend. See Mayeaux v. La. Health Servs. & Indem. Co., 376 F.3d 420, 427 (5th Cir.2004) (denying a motion to amend a pleading that would have fundamentally altered the nature of the ease and imposed additional discovery requirements and undue prejudice on the nonmoving party).
Enpath raised its inequitable conduct defense in two motions on November 16, 2007 and December 7, 2007. To plead inequitable conduct with particularity as required under Rule 9(b), Enpath contends that it could not file these motions until it received the November 5, 2007 Kontos declaration. The district court reasoned that allowing Enpath to amend its pleadings “almost certainly” would have resulted in undue delay and would have “very likely” resulted in undue prejudice to Pressure Products.
The district court also considered the length of time that the Kontos declarations were available to Enpath before bringing its motions to amend. The 1995 declarations were publicly available at least since November 19, 1996, the date the PTO reissued the '904 patent. Moreover, Enpath received a copy of the '904 patent’s file wrapper as early as January 16, 2007. Nothing prevented Enpath from conducting discovery on the two 1995 Kontos declarations shortly following this date. Accordingly, because Enpath has not met its high burden of showing that the district court abused its discretion in denying En-path’s motions for leave to amend its answer, this court affirms the district court’s denial.
Since the trial court’s ruling on this motion to amend, this court has issued significant opinions requiring specific and demanding showings of evidence before a party may assert the defense of inequitable conduct. See, e.g., Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed.Cir.2008) (“We review the district court’s inequitable conduct determination under a two-tier standard; we review the underlying factual determinations for clear error, but we review the ultimate decision as to inequitable conduct for an abuse of discretion.”). Moreover,
The burden of proving inequitable conduct lies with the accused infringer .... To successfully prove inequitable conduct, the accused infringer must present “evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO].” ... Further, at least a threshold level of each element — i.e., both materiality and intent to deceive-must be proven by clear and convincing evidence.... And even if this elevated evidentiary burden is met as to both elements, the district court must still balance the equities to determine whether the applicant’s conduct before the *1321 PTO was egregious enough to warrant holding the entire patent unenforceable.... Thus, even if a threshold level of both materiality and intent to deceive are proven by clear and convincing evidence, the court may still decline to render the patent unenforceable.
Id. (internal citations omitted); see also Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1329 n. 5 (Fed.Cir.2009) (“Whereas an inference of deceptive intent must be reasonable and drawn from a pleading’s allegations of underlying fact to satisfy Rule 9(b), this inference must be ‘the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.’ ” (emphasis added, internal citations omitted)).
Based on these eases, this court doubts that the motion to amend would even satisfy these higher standards of proof to invoke the doctrine in the first place. These subsequent cases further support the trial court’s action to deny the motion to amend.
VI.
Because the district court erred by including structures not described in the specification in the definition of the corresponding structure to the means-plus-function claim element, this court vacates and remands for a determination of infringement using the correct claim construction. Because the record supports the district court’s denial of Enpath’s motions for JMOL and leave to amend its answer, this court affirms those denials.
AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

COSTS

Each party shall bear its own costs.

. Although independent claim 1 of the '355 patent appears to recite specific structure, i.e., *1313 "wherein said means for permitting removal of said hemostatic valve comprises a two-part body ..the parties did not raise any argument that the recited structure affects the claim construction,