MICROWAVE VISION, S.A., MVG Industries, SAS, and MVG, Inc., Plaintiffs,

v.

ETS-LINDGREN INC., Defendant.

CIVIL ACTION NO. 1:14-CV-1153-SCJ

United States District Court, N.D. Georgia, Atlanta Division.

Signed September 20, 2016

Charles P. Kennedy, Robert B. Hander, Lerner David Littenberg Krumholz & Mentlik, Westfield, NJ, Dale Lischer, Matthew P. Warenzak, Smith Gambrell & Russell, LLP, Atlanta, GA, for Plaintiffs.

David A. Nester, Douglas A. Robinson, Joel R. Samuels, Rudy A. Telscher, Harness Dickey & Pierce, St. Louis, MO, Christopher Paul Galanek, John C. Bush, Bryan Cave, LLP, Atlanta, GA, for Defendant.

## ORDER

HONORABLE STEVE C. JONES, UNITED STATES DISTRICT JUDGE

Before the Court in this patent infringement action is defendant ETS-Lindgren, Inc.'s (ETS) invalidity-based motion for summary judgment (Doc. 82), and plaintiffs' oppositional (they seek a declaration

of validity) cross-motion for summary judgment. Doc. 84.

## I. BACKGROUND

As the Court related in its Markman[1] order:

Plaintiff Microwave Vision, S.A. and its wholly owned subsidiaries MVG Industries, SAS, and MVG, Inc. (collectively, the "Plaintiffs"), and Defendant[ ] ... ETS-Lindgren Inc.... are competitors in the field of over-the-air measurement systems, including multi-probe systems. See Doc. No. [19], p. 2. Among other things, such systems can be used to measure various parameters relating to antennas used in wireless devices, including wireless cellular communication devices. See id. Plaintiff Microwave Vision owns the rights to U.S. Patent No. 7,443,170 (the "170 Patent"), which issued on October 28, 2008, and is entitled "Device and Method for Determining at Least One Variable Associated With the Electromagnetic Radiation of an Object Being Tested." See Doc. No. [1], ¶17; Doc. No. [1-1]. Plaintiffs believe that Defendants' ... multi-probe array measurement system utilizes technology claimed by the 170 Patent. Accordingly, Plaintiffs have filed the present action accusing Defendants of patent infringement. See Doc. No. [1].... Defendants [then] filed counterclaims seeking declarations that (1) [they] have not infringed the '170 Patent, and (2) the '170 Patent is invalid. See Doc. Nos. [17]-[19].

Microwave Vision, S.A. v. ESCO Techs. Inc., No. 14–CV–1153–SCJ, 2015 WL 11237099, at *1 (N.D.Ga. July 15, 2015) ("Markman Order") (footnote omitted), reconsideration denied Microwave Vision, S.A. v. ETS–Lindgren Inc., No. 1:14–CV–1153–SCJ, 2016 WL 4111361 (N.D.Ga. Feb. 2, 2016) ("Reconsideration Order").

The Markman Order construed three terms in the 170 Patent:

1. **"network of probes"** is construed to mean **"multiple probes having a fixed and coplanar relationship to one another"**

2. **"means for providing a plurality of measurements using the network of probes, the plurality of measurements corresponding to a plurality of angular positions of a given one of the network of probes relative to the test object"** is construed as follows:

**Claimed Function:**

"providing a plurality of measurements using the network of probes, the plurality of measurements corresponding to a plurality of angular positions of a given one of the network of probes relative to the test object"

**Associated Structure:**

(1) "a mast that supports the object under test, and that extends radially from a base and along the main axis of support to an opposite end that is nearer the geometric center of the arc formed by the network of probes, and that pivots in a relative fashion with respect to the network of probes"

(2) "a mast that supports the object under test, and that extends radially from a base and along the main axis of support to an opposite end that is nearer the geometric center of the arc formed by the network of probes, and with respect to which the network of probes pivots in a relative fashion"

---

**1.** See Markman v. Westview Instruments, Inc., 517 U.S. 370, 374, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (evaluating a patent claim's validity "in turn necessitates a determination of 'what the words in the claim mean'"). A "Markman" hearing (or order) thus delves exclusively into claim construction issues.

3. "**means for pivoting one or more of the network of probes and the support** about a point located in the plane formed by the network of probes or about a point located in the plane parallel to the plane formed by the network of probes to vary, between successive ones of the plurality of measurements, an angle formed between the given one of the network of probes and the main axis of the support by a fraction of the angular pitch of the network of probes so that a total number of measurements in the plurality of measurements is greater than a total number of probes in the network of probes" is construed as follows:

**Function:**

"pivoting the network of probes, the support, or both about a point located in the plane formed by the network of probes, or in a parallel plane"

**Structure (for Pivoting the Network of Probes):**

"an arc mounted on rollers and an electric motor drive"

**Structure (for Pivoting the Support):**

"an electric motor, an actuator that extends more or less horizontally in the plane of the arc and is hinged to one end of the base, and a convex bottom surface on the base of a mast, which rests, by means of one or more rollers, on a complementary concave surface"

2015 WL 11237099, at *18 (underlining added).

Having argued that Claim 12's "pivoting one or more of the network of probes and the support" language meant that the

"means" must "pivot" *both* the "support" and "network of probes,"[2] but not one or the other (Doc. 43 at 16-21), ETS disagreed with the Court's construction of Claim 12. It consequently moved for reconsideration, where it advanced the same argument again. See Doc. 62 at 7 ("ETS contends that ['one or more of the network of probes and the support'] only means" that both the support and network can pivot, but not one or the other). ETS also insisted that the Markman Order failed to address its alternative argument that the same phrase suffered fatal indefiniteness issues because "it is unclear which [interpretation] is correct." Id.

The Court declined to rehash its Claim 12 construction, finding that ETS illuminated no clear error to justify reconsideration. Doc. 89 at 2 ("The Court finds Defendant's motion essentially to be asking the Court to 'give it another try' which is not a permissible basis for a motion for reconsideration."). It then noted that it considered both parties' construction arguments (as well as all intrinsic evidence), and in doing so found that Claim 12's functions included pivoting either the support, the network of probes, or both. Id. at 4.

"Implicit in [the Markman Order] ruling, therefore, is a finding that the claim was not indefinite." Id. More specifically, in rejecting ETS' contrary argument, the Court made clear "that [Claim 12] was not indefinite because . . . in light of the specification and prosecution history, [it] informe[d] those skilled in the art about the scope of the invention with reasonable certainty." Id. Going further, the Court stated that it "specifically rejected [ETS'] argument that the patent failed to disclose and clearly link any structure that corresponds to [Claim 12's] proposed function and

**2.** ETS also argued that "one or more" applied only to "network of probes" such that less

than all probes moved at the same time.

therefore should be invalid for indefiniteness." Id. at 5.

As it litigated this case, ETS made the same Claim 12 construction arguments in a parallel *inter partes* proceeding before the Patent Trial and Appeal Board (PTAB). See Doc. 82-10 at 10 ("ETS asserts that the 'one or more' language [of the means for pivoting limitation] unambiguously refers to the network of probes," and thus that "the claimed function of this limitation requires movement of the network of probes *and* the support") (emphasis and alteration in original). The PTAB ultimately denied ETS' petition (more on that later), and in doing so concluded that it failed to identify a structure that linked to a function both plaintiffs and ETS ascribe to Claim 12—that the "means for pivoting," at a minimum, *"includes* pivoting *both* the network of probes and the support." Id. (emphasis in original).

Now, wielding the PTAB decision offensively, ETS moves for summary judgment on invalidity grounds. Doc. 82. It contends that, as the PTAB found, no structure in Claim 12 links to the claimed function of pivoting both the support and the network of probes.[3] Doc. 82-1 at 22. That linkage failure, it says, creates indefiniteness that violates 35 U.S.C. §§ 112(b) & (f) which in turn fatally taints the 170 Patent. Id. at 25.

Plaintiffs, according to ETS, admitted as much by arguing, before this Court and the PTAB, that a claim "scope covering" a "both" pivot would produce an "imaginary system" that covers none of the patent's embodiments. Id. at 27 (citing Doc. 42 at 6-

7). "Nowhere" in their Markman briefing, says ETS, did plaintiffs "argue the patent describes an embodiment where both the network of probes and the support pivot." Id. at 11. Nor did they "point to any disclosure associating or linking any structure to the dual, third function of pivoting both structures" (the network and support). Id. at 11–12. Instead, plaintiffs pointed to language in the 170 Patent's Summary of Invention describing the "relative tilting" of the network of probes and support, and asserted that such tilting can only occur "when only one body tilts 'relative' to the other." Id. at 12. To ETS, that necessarily excludes both the network and support pivoting simultaneously. Doc. 88 at 8.

ETS leans heavily on the PTAB decision, too. It urges the Court to adopt that body's conclusion that the "170 Patent fails to clearly link corresponding structure to the function of pivoting **both** the network of probes and the support." Doc. 82-1 at 22 (emphasis in original). Because PTAB's analysis, though not aimed at invalidity issues, "tracks exactly the indefiniteness analysis the Court must apply here," the Court, ETS insists, must find Claim 12 invalid "[u]nless [it] is prepared to disagree with the Patent Office." Id. at 22–23.

Finally, ETS contends that (1) Claim 12 violates § 112(b) "because the Court's construction [of it] does not comport with what the applicant regarded as his invention" (Doc. 82-1 at 26);[4] and (2) "even if the two separate embodiments [ (the means

---

3. Both parties agree that Claim 12 includes as a function pivoting the support *and* the network of probes (the "both" pivot). Their divergence comes because ETS insists that is Claim 12's *only* function, while plaintiffs contend it also includes pivoting just the support, or just the network of probes.

4. "By [plaintiffs'] admission, the patent was never intended to cover an embodiment in

which both the support and the probes pivot, and any claim attempting to cover such an "imaginary" embodiment violates Section 112. Yet the Court has found claim 12 covers a system where both pivot. Claim 12 is therefore invalid due to [plaintiffs'] failure to set forth what MVG regarded as its invention." Doc. 82-1 at 27.

for pivoting the support and network of probes) ] could be combined somehow ... the patent still would not describe enough structure for the system to work." Id. at 28. That, says ETS, "is because software/hardware would be required to ... actually move the support and/or probes ... [and] coordinate the movement of the two structures." Id.

Opposing, plaintiffs contend that ETS' motion is "in actuality," *not* seeking summary judgment. Doc. 83 at 6. Instead, it "ask[s] this Court to [effectively] reconsider its construction of the 'means for pivoting' limitation of Claim 12, and to reverse the specific holding it set forth at page 46, footnote 21 of its claim construction [Markman] opinion." Id. "On that basis alone," say plaintiffs, ETS' summary judgment "motion should be denied outright as an improper attempt to challenge" the Court's previous reconsideration ruling. Id.

Plaintiffs also insist that ETS mischaracterized their Markman briefing and arguments before the PTAB. Specifically, their "imaginary system" argument never, as ETS urges, applied to "a system where both the support and network of probes pivot." Doc. 83 at 11. Instead, it responded to ETS' contention that the "one or more" language in Claim 12 referred only to "network of probes," not the support, such that fewer than all probes could pivot. *That,* say plaintiffs, created an imaginary system because moving fewer than all probes is "a capability that is impossible to provide using the structures disclosed in [the] 170 Patent specification." Id. at 12 (quoting Doc. 40 at 19). ETS therefore "has no basis for reading any of [plaintiffs'] statements as an admission that pivoting 'both' would constitute an 'imaginary' embodiment." Id. at 13.

Beyond mischaracterizing plaintiffs' arguments, ETS also, according to plaintiffs, inappropriately spun the Court's Markman order by stating that it "found [that] the 170 patent does not disclose a system in which **both** the support and the probes pivot." Doc. 83 at 14 (alteration and emphasis in original). Plaintiffs insist that, in reality, the Court held that "it appears undisputed from the parties proposed constructions ... that pivoting both the 'network of probes' and the 'support' can be achieved through some combination" of the two structures." Id. at 15 (quoting Doc. 59 at 46 n.21).

What's more, say plaintiffs, ETS itself argued in its Markman briefing, contrary to its current position, that Claim 12 included the "both" pivot *and* that it "specifically identifie[d] structure corresponding to the pivoting functions." Doc. 83 at 16 (quoting Doc. 41 at 23). ETS took the same tack in its briefing before the PTAB, where it contended that "the patent plainly contemplates that both [the support and network of probes] can move, as claim 12 covers." Id. at 17 (quoting Doc. 82-7 at 29). "[T]hose prior positions," plaintiffs contend, "may fairly be treated as binding admissions." Id. at 16.

The PTAB decision comes in for criticism as well. It "has no binding effect" on this Court, misstated and misapplied the law, expressly disclaimed an indefiniteness inquiry, and ruled based on a more limited record than that before this Court. See Doc. 83. Finally, plaintiffs urge summary judgment in their favor because (1) no genuine dispute exists that the 170 Patent covers the "both" pivot; (2) "one of ordinary skill in the art would have understood that to pivot both ... the corresponding structure would be a combination of the disclosed structures;" and (3) no additional hardware or software is "necessary for performing the function of pivoting 'the network of probes, the support, or both.'" Id. at 25–29.

## II. GOVERNING STANDARDS

Summary judgment is appropriate when the moving party establishes that, based upon the evidence presented, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he requirement that a dispute be 'genuine' means simply that there must be more than some metaphysical doubt as to the material facts." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 261, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations and internal quotation marks omitted). The court views the record and draws all factual inferences in the light most favorable to the non-movant. Carlson v. FedEx Ground Package Sys., Inc., 787 F.3d 1313, 1317 (11th Cir.2015). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Id. at 1318 (quoting Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997)). Dean–Mitchell v. Reese, 837 F.3d 1107, 1111–12, 2016 WL 4756942, at *2 (11th Cir. Sept. 13, 2016).

## III. ANALYSIS

### A. Preliminary Concerns

Before turning to the substance of either party's arguments, the Court first addresses (1) plaintiffs' contention that ETS plies a reconsideration request in the guise of a motion for summary judgment (Doc. 83 at 8), and (2) ETS' alleged mischaracterization of plaintiffs' Markman arguments and the Court's own findings in the Markman and Reconsideration Orders.

### 1. *Reconsideration*

In its Markman briefing (and before the PTAB, for that matter), ETS argued that Claim 12's function encompassed pivoting both the support and the network of probes, but not pivoting one or the other. See Doc. 41 at 6. The Court disagreed, and held that Claim 12's "function . . . is 'pivoting the network of probes, the support, *or both*." Doc. 59 at 45. With nothing new to add, ETS nevertheless moved for reconsideration, repeating the same "it's and, not and/or"[5] argument. Doc. 62 at 7-8.

The Court rejected that argument a second time. Doc. 89 at 3-4. In doing so, it noted that "[i]mplicit in [its] ruling . . . is a finding that [Claim 12] was not indefinite." Id. at 4. "The Court found that the claim was not indefinite because 'the patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty.' See Dow Chemical Co. v. Nova Chemicals Corp. (Canada), 803 F.3d 620, 634 (Fed. Cir.2015) (quoting Nautilus. Inc. v. Biosig Instruments. Inc., — U.S. —, —, —, 134 S.Ct. 2120, 2124, 2129, 189 L.Ed.2d 37 (2014))." Id. As noted above, the Court also "specifically rejected Defendants' argument that the patent failed to disclose and clearly link any structure that corresponds to the proposed function and therefore should be invalid for indefiniteness." Id. at 5.

---

5. ETS asked for clarification and/or reconsideration of the Court's determination that the function of the "means for pivoting one or more of the network of probes and the support about a point located in the plane formed by the network of probes...." As briefed to the Court, Microwave contends the highlighted language means "and/or" such that the probes can pivot, the support can pivot, or both can pivot. ETS contends that the highlighted phrase only means "and", or alternatively, the phrase is indefinite because it is unclear which is correct. Doc. 62 at 7.

In the present summary judgment motion, ETS argues to the contrary, again. See Doc. 82-1 at 8 ("[T]he patent does not clearly link structure to a system in which both the support and probes can pivot."). Indeed, its entire motion turns on whether Claim 12 definitively links function to structure. Since the Court already decided that precise issue, rehashing it here constitutes reconsideration.

A motion for reconsideration is appropriate only where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact. Jersawitz v. People TV, 71 F.Supp.2d 1330, 1344 (N.D.Ga.1999); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F.Supp. 1557, 1560 (N.D.Ga.1995). A motion for reconsideration should not be used to present the Court with arguments already heard and dismissed, or to offer new legal theories or evidence that could have been presented in the previously filed motion. Bryan v. Murphy, 246 F.Supp.2d 1256, 1259 (N.D.Ga. 2003); see also Preserve Endangered Areas, 916 F.Supp. at 1560 ("A motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

Bryant v. Jones, No. 1:04–CV–2462–WSD, 2007 WL 113959, at *1 (N.D.Ga. Jan. 10, 2007).

Local Rule 7.2(E) contains additional requirements. Parties may not seek reconsideration more than twenty-eight "days after entry of the [challenged] order or judgment." N.D. Ga. L.R. 7.2(E). And under no circumstances may they "file motions to reconsider the court's denial of a prior motion for reconsideration." Id.

Strict adherence to that rule would neutralize those portions of ETS' motion that address whether Claim 12 sufficiently links its function to structure since the Reconsideration Order already put that issue to bed (a sufficient link in fact exists, Doc. 89 at 5). It nevertheless remains true that, as ETS notes, the Court has never considered the PTAB decision—which found insufficient linkage—before now.[6] Doc. 88 at 12.

The opinion of an expert body like the PTAB can carry significant persuasive weight when courts deal with technically complex issues, like patents. And, though they need not do so in all cases, courts can engage in "a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves." Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd., 599 F.3d 1308, 1316 (Fed.Cir.2010). Although the Court hesitates to give ETS a third bite at the apple, ignoring the PTAB decision entirely smacks of folly, too. It therefore will address that *inter partes* review insofar as it disagrees with the Court's construction of Claim 12. All other issues previously decided—namely, that "means for pivoting one or more of the network of probes and the support" encompasses pivoting the network, the support, or both—remain so.

### 2. ETS' Misconstruction of the Court's Findings and Plaintiffs' Arguments

ETS repeatedly asserts that plaintiffs "argued to the Court [that] . . . a system

---

**6.** The Court did not decide ETS' August 2015 reconsideration motion (Doc. 62) until February 2, 2016 (Doc. 89). ETS' PTAB-infused motion for summary judgment came almost two months before that decision. Doc. 82 (filed December 8, 2015). But because the reconsideration motion predated the PTAB decision (issued in October 2015), the Court did not consider the latter in deciding the former.

where both the support and network of probes pivot is imaginary," and that the Court so found. See, e.g., Doc. 82-1 at 7 ("According to [plaintiffs]," a system where both structures pivot is *"imaginary"*) (emphasis in original); id. ("[T]he Court's *Markman* order relies upon [plaintiffs'] "imaginary" argument in ruling against ETS's position."). It's true that the Court "agrees with Plaintiffs … that [ETS has] advanced 'a construction of 'one or more of …' that would make Claim 12 cover an imaginary system while excluding both disclosed embodiments." Doc. 59 at 45. But that in no way means that plaintiffs ever argued, or the Court ever accepted, that a construction of Claim 12 where both structures pivot creates an "imaginary system."

To be clear: the "imaginary system" is one where "one or more" applies *only* to the "network of probes," not also to the support. That construction, (which ETS pushed during claim construction and before the PTAB, who also rejected it), at least based on the patent as written, cannot exist because the specification and summary of invention make clear that the network of probes moves as one structure, not each probe individually.[7] To construe Claim 12 differently would indeed create the aforementioned "imaginary system" that effectively reads the support and network embodiments out of the 170 Patent.

ETS also claims that plaintiffs argued that the support and network cannot both move (Doc. 82-1 at 7), and that this Court agreed. Id. at 9. Not so. Plaintiffs consistently argued that Claim 12 encompasses a "both" pivot. See, e.g., Doc. 42 at 6 ("Plaintiffs' proposed construction would cover both disclosed embodiments (*as well as their combination*)….") (emphasis add-

ed). They never argued that moving both is impossible. At best (or worst, depending on perspective), they used the same language from the Summary of Invention to argue for each embodiment (Figures 1 and 2 in the 170 Patent) pivoting the support and network of probes individually *and* pivoting both. See Doc. 42 at 9.

Neither did the Court find that "the 170 Patent does not disclose a system in which *both* the support and probes pivot." Doc. 82-1 at 9. In the Markman Order, the Court construed Claim 12's function to include "pivoting the network of probes, the support, or *both*…." Doc. 59 at 45. The Reconsideration Order reiterated that finding. See Doc. 89 at 4 ("The Court accepted Plaintiffs' arguments, thereby finding the functions to be 'and/or' and rejected Defendant's argument for 'and' only."). Any argument that the Court held otherwise—and any derivative conclusions—fall flat.

So there is no confusion moving forward, the Court explicitly finds (again) that:

(a) Plaintiffs never "admitted" or argued that Claim 12 does not include a "both" pivot.

(b) The Court never adopted such a construction.

(c) "Imaginary system" refers *only* to that construction of Claim 12 ETS advances in which the phrase "one or more" applies to "network of probes," but not "the support."

(d) "[O]ne or more of the network of probes and the support," means "pivoting the network of probes, the support, or both." It does *not* mean that "one or more" of the probes in the network pivots.

---

7. See Doc. 40 at 19 ("[I]f Defendants' proposed construction were adopted, claim 12 would describe a system in which a single probe could be moved along the arc while the remainder of the probes stayed stationary—a capability that is impossible to provide using the structures disclosed in '170 Patent specification.").

With those findings made clear, the Court proceeds to address the PTAB decision and the parties' arguments that do not offend the retrictions on reconsideration outlined above.

## B. The PTAB Decision

Before the PTAB, the parties made the same arguments they make here. ETS argued that Claim 12's function "requires the movement of the network of probes *and* the support," while plaintiffs contended that it covered "pivoting the network of probes, the support, or both." Doc. 82-10 at 10 (emphasis in original). Because they both agreed that the function included the "both" pivot, the PTAB considered only whether Claim 12 included "corresponding structure for [that] claimed function." Id. at 11.

After observing that "neither party expressly state[d] that the combination of structures disclosed in Figures 1 and 2 of the 170 Patent corresponds to the ['both' pivot]," the PTAB found ETS' *inter partes* petition—*not* the 170 Patent itself—"deficient for failing to identify structure that corresponds to the full scope of the claimed function." Doc. 82-10 at 12. "Specifically, ETS does not argue expressly that the structure corresponding to the dual function of pivoting the network of probes *and* pivoting the support is the *combination* of these structures disclosed in Figures 1 and 2 of the '170 patent."[8] Id. at 13 (emphasis in original). The PTAB went on to note that the patent's silence on Figures 1 and 2's mutual exclusivity "is insufficient to 'clearly associate' the *combination* of" those two structures. Id.

Going further, the PTAB also found that the 170 Patent's Specification itself failed to "clearly associate the combination of separate structures disclosed in Figures 1

and 2 as corresponding to the claimed dual functions." Doc. 82-10 at 14. It rejected plaintiffs' "relative tilting" argument because that Summary of Invention language included "no mention of the structures disclosed in Figures 1 and 2, nor their combination." Id. Because "[t]he 170 patent Specification does not describe and identify an apparatus *combination* that performs both pivoting the network of probes *and* pivoting the support, neither the claimed function proposed by ETS nor [plaintiffs] has corresponding structure." Id. at 16. And because both parties' Claim 12 constructions included a "both" pivot, the PTAB found no corresponding structure "irrespective of which construction [it] might adopt." Id. at 17. Importantly, and because its authorizing statute limits *inter partes* review to patentability determinations, the PTAB expressly disclaimed any indefiniteness analysis. Id. at 3 n. 1 ("[W]e do not make any determinations of indefiniteness.").

At bottom, and regardless of whether the analysis is framed in patentability or indefiniteness terms, the PTAB and this Court simply disagree that the 170 Patent fails to "clearly associate" the structures in Figures 1 and 2 with the "both" pivot function. Compare Doc. 89 at 5 ("The Court specifically rejected [ETS'] argument that the patent failed to disclose and clearly link any structure that corresponds to the proposed function and therefore should be invalid for indefiniteness.") (citing the 170 Patent's "relative tilting" language)), with Doc. 82-10 at 14 ("[T]he 170 patent Specification does not 'clearly associate' the combination of structures . . . as corresponding to the claimed dual function of" the "both" pivot) (rejecting the "relative tilting" language). And because nei-

---

**8.** The PTAB, as this Court held, also rejected ETS' argument that "one or more" referred solely to "network of probes" such that "less than all of the probes may be moved." Doc. 82-10 at 13 n.8.

ther binding precedent, the parties' arguments before this Court, nor the analytical heft of the PTAB decision demand that this Court reverse course, its prior indefiniteness finding stands.

■ As the PTAB correctly observed, "[c]onstruction of a means-plus-function limitation," like Claim 12's "means for pivoting" limitation, "involves two steps." Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 296 F.3d 1106, 1113 (Fed.Cir. 2002). "First, the court must identify the claimed function," then it "must determine what structure, if any, disclosed in the specification corresponds to the claimed function. In order to qualify as corresponding, the structure … must clearly associate … with the performance of the function." Id. (citation omitted). That "inquiry is undertaken from the perspective of a person of ordinary skill in the art." Id.

■ "[M]ultiple structures *can* perform a single claimed function," but "only where the claim language permits, and only where the specification clearly identifies corresponding structures." Id. at 1117. In Cardiac Pacemakers, for example, the patent at issue claimed, among other things, to monitor electrocardiogram (ECG) signals and provide an electric charge when heart rhythm became abnormal. Id. at 1109–1110. But the structure associated with that function only consisted of a box that displayed the ECG signals and contained a button that would release the needed charge. Id. at 1110. A doctor was required to actually interpret the signal and depress the button before the claimed function came to pass. Id. at 1118–1119 ("Excluding the physician, no structure accomplishes the claimed monitoring of ECG signals and activation of the charging means in the presence of abnormal cardiac rhythm."). "Because no structure disclosed in the embodiments of the invention actually perform[ed] the claimed dual func-

tions," the court found that "the specification lack[ed] corresponding structure."

Here, the claim language permits a combination of Figure 1 and 2's structures to perform the "both" pivot function. The patent discloses only two structures—Figures 1 and 2. Ergo, for any claimed function, the only possible structures that exist to perform the function are Figure 1, Figure 2, a combination of the two, or some unmentioned structure, in which case the patent is unambiguously indefinite. Claim 12 then discusses (under the Court, and PTAB's, construction at least) "means for pivoting" both the support and the network of probes. Even a lay person, much less one skilled in the art, can discern that Figures 1 or 2 in isolation cannot perform the "both" pivot function (Figure 1 plainly relates only to structure that effects the support, while Figure 2 relates to the network of probes). The only other possible structure the patent discusses that could perform that function—as the relative tilting language makes clear—is a combination of Figure 1 and 2. Indeed, and as the Court already found, from the parties' Markman arguments "it appears undisputed that pivoting both the 'network of probes' and the 'support' can only be achieved through some combination of the structures necessary" for pivoting the network and support individually. Doc. 59 at 46 n.21.

It's true that claim language must "clearly identif[y] corresponding structures." Cardiac Pacemakers, 296 F.3d at 1117. But clear identification of multiple structures performing a single function, contrary to what ETS argues and the PTAB found, consists of more than "structures A and B together correspond to function C" verbiage. If uneducated non-experts, much less a person skilled in the art, can discern that neither A nor B can alone perform C, and the patent contains

unambiguous language that only makes sense if A and B combine, an "A+B together perform C" construction is "clearly identife[d]."

That's the case here. Figures 1 and 2 cannot individually perform the "both" pivot function. But Claim 12 clearly sets out that function, and the "relative tilting" language equally clearly states that the "means" for moving the network of probes *and* the means for moving the support tilt relative to each other. Put differently, one skilled in the art would read the 170 Patent to mean that Figures 1 and 2 allow the support and the network of probes to, at the same time, tilt their respective structures relative to one another. That's clear identification and that's all the definiteness § 112(f) requires of "means plus function" limitations. See Cardiac Pacemakers, 296 F.3d at 1113.

The Court accordingly disagrees with the PTAB and ETS. Claim 12, as the Court previously found, clearly links its functions with corresponding structure. It therefore is sufficiently definite.

### C. ETS' "Not Enough Structure" Argument [9]

■ In its only non-PTAB related, non-reconsideration-barred argument, ETS insists, based primarily on expert testimony from Dr. Edward Joy, that "even if the two separate embodiments could be combined somehow ... the patent still would not describe enough structure for the system to work ... because software/hardware would be required to: (1) actually move the support and/or the probes ... and (2) coordinate the movement of the two structures." Doc. 82-1 at 28. Plaintiffs, however, insist that "the function of pivoting the 'network of probes, the support, or both' ... neither requires any control functions nor any software or associated hardware." Doc. 83 at 29. If the "means for pivoting" are, standing alone, sufficient to pivot the disclosed structures (the network and support), the claim, they say, must survive. Id.

To begin, Claim 12's function, as construed by this Court, comprises pivoting the network, the support, or both. See Doc. 59 at 45. So, what structure must exist to "actually perform [that] function, not merely enable the ... structure to operate?" Asyst Techs., Inc. v. Empak, Inc., 268 F.3d 1364, 1371 (Fed.Cir.2001). Certainly a mechanism—here, "an arc mounted on rollers and an electric motor drive," and "an electric motor [and] an" actuator/roller combination (Doc. 59 at 50)—that provides the mechanical ability to pivot is necessary. But what about structure that directs the pivot motion? Is that central to actual performance, or merely an enabling feature?

Toasters and electrical outlets provide a helpful example. See Asyst, 268 F.3d at 1371. A toaster requires a heating element

---

9. A species of its previous indefiniteness arguments, ETS also contends that "the Court's construction" of Claim 12 "does not comport with what the applicant regarded as his invention" because plaintiffs admitted that the patent "was never intended to cover an embodiment in which both the support and the probes pivot." Doc. 82-1 at 26-27. As discussed above, plaintiffs never made such an admission. That alone neuters ETS' argument. If it didn't, the Court still would not consider this argument because it is nothing more than disguised reconsideration of Claim 12's settled construction. The Court already found that Claim 12 includes a "both" pivot function. It already found corresponding structure. In doing so, it necessarily found that Claim 12 described "what the applicant regarded as his invention." Because the present argument comes far beyond the 28 days allowed for reconsideration motions (to say nothing of the fact that this argument formed part of the Reconsideration Order and Local Rule 7.2(E) prohibits second motions for reconsideration), it will not now be heard.

to toast. Without it, nothing gets hot and no bread (or bagel) can ever develop the signature crunch that comes from applying heat to its slightly moist exterior. That element therefore "actually perform[s]" the toasting function. Id.

Toasters, however, also need electricity to operate. No toasting occurs without the current flow that heats the aforementioned element. But unlike the heating element itself, electricity, and the outlet it flows from, simply enables the toast function—it does not play a part in performing it. Asyst, 268 F.3d at 1371.

Here, rollers, actuators, electric motors, convex, and concave surfaces combine to provide the pivoting function Claim 12 describes. Doc. 59 at 50. They are the heating element of plaintiffs' invention (i.e., they "actually perform" the pivoting function). Like the toaster though, they stand silent— they don't move/pivot—without something more.

They, like the toaster, need electricity to enable their operation. Also like the toaster, however, they need some external force to direct their pivoting capabilities. A typical toaster needs a person to depress a button to lower the bread and activate the heating element, and the 170 Patent's "means for pivoting" needs software or hardware (and a human to, at least initially, direct either) to enable their coordinated pivoting so that they can provide a plurality of measurements greater than the number of probes in the network. But that software or hardware doesn't actually pivot the support or network. See Northrop Grumman Corp. v. Intel Corp., 325 F.3d 1346, 1352 (Fed.Cir.2003) ("The signals that are monitored by the 'means for monitoring' cannot be part of the structure that does the monitoring."); O.I. Corp. v. Tekmar Co., 115 F.3d 1576, 1581 (Fed.Cir. 1997) (the passage through which a slug travels "is not the means that causes the passing"). It enables the pivot.

ETS contends that "skips past the fundamental question of whether the claimed function here requires causing the structure(s) to move." Doc. 88 at 28. But that argument itself elides the real issue which, as noted above, is whether the pivot's cause "actually performs" the pivot, or merely enables it. The cause is the cause (in the same manner that electricity is the but for cause of a toaster turning on), but it's the motors, actuators, rollers, and surfaces that perform the pivot function. Just as toasters need a human to depress a button to turn on the heating element (to "cause" it to turn on), so too does a "means for pivoting" need a separate structure to cause the motor and actuators to move.

Cardiac Pacemakers once again proves instructive. Recall that in that case, the patent claimed that the device functioned in part by monitoring ECG signals and providing an electrical shock when a patient's heartbeat abnormalized. Cardiac Pacemakers, 296 F.3d at 1109–1110. The court held that no structure corresponded to those claimed functions because a doctor—something the claim never mentioned—both monitored the signal and triggered the shock release. Id. Put differently, it found that the claim's corresponding structure did not "include all structure that actually performs the recited function." Id. at 1119.

By contrast, Claim 12 includes all components needed to perform its "pivoting the network of probes, the support, or both" function. Doc. 59 at 45. In Cardiac Pacemaker terms, the 170 Patent contains the proverbial doctor. As discussed above, the motors, actuators, rollers and curved surfaces combined actually perform the pivoting. Hence, Claim 12 is not invalid for failing to describe the pivoting function's cause, and ETS' argument to the contrary therefore must fail.

## IV. CONCLUSION

Many of ETS' summary judgment arguments improperly rehash, for a third time, positions it took during <u>Markman</u> briefing and on reconsideration. The Court accordingly declines to consider those arguments. And because (1) the PTAB decision provides no reason for the Court to alter its previous claim construction, and (2) no additional structure beyond what Claim 12 describes is needed to perform the "both" pivot function, ETS' invalidity-based motion for summary judgment (Doc. 82) is **DENIED**. For those same reasons, plaintiffs' cross-motion (Doc. 84) that asks the Court to declare Claim 12 of the 170 Patent valid is **GRANTED**.

**IT IS SO ORDERED,** this 20th day of September, 2016.